IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | |  |
|---|---|---|
| PYR ENERGY CORPORATION | § | |
| | § | |
| V. | § | 1:05-CV-530 |
| | § | |
| SAMSON RESOURCES COMPANY | § | |
| and SAMSON LONE STAR | § | |
| LIMITED PARTNERSHIP | § | |

## MEMORANDUM OPINION RE PLAINTIFF'S MOTION TO DISMISS

PYR Energy Corporation (PYR) moves to dismiss Samson Resources Company and Samson Lone Star Limited Partnership's (collectively referred to as Samson) alternative counterclaim for reformation.

### I. Samson's Counterclaim

Samson asserts a claim for reformation, arguing that if a Samson-Venus Purchase Sale Agreement (PSA) does not expressly provide Samson authority to independently pool Venus's (now PYR's) interests, that contract should be reformed to reflect the actual pooling agreement between Venus and Samson. Samson bases its claim for reformation on either a mutual mistake, or a unilateral mistake accompanied by fraud.

## II.  PYR'S MOTION TO DISMISS

PYR argues that Samson's counterclaim should be dismissed for either failure to state a claim, or for failure to plead fraud or mistake with particularity.  See Fed. R. Civ. Pro. 12(b)(6) and 9(b).  Specifically, PYR argues that the counterclaim fails to state a cognizable claim because – notwithstanding a prior court order requiring Samson to file a more definite statement of its counterclaim – Samson failed to 1) allege that there was a prior agreement between Samson and Venus that Samson would have pooling authority; 2) allege any facts that would permit an inference of mutual mistake; and 3) plead fraud with particularity as there are no allegations establishing the elements of fraud.

## III.  PRINCIPLES OF ANALYSIS

A.  **Reformation of a Contract**

Under Texas law, judicially-imposed reformation of an existing contract is appropriate only when the party seeking to reform the contract can prove the facts and circumstances warranting reformation by clear and convincing evidence.  See Howard v. INA County Mut. Ins. Co., 933 S.W.2d 212, 222 (Tex. App.—Dallas, 1996, writ denied).  Reformation is appropriate based on a mutual mistake of the contracting parties when there was 1) a prior agreement between the parties, and 2) a mutual mistake in reducing that agreement to writing.  See Cherokee Water Co. v.

Forderhause, 741 S.W.2d 377, 379 (Tex. 1987); Estate of Hearn v. Hearn, 101 S.W.3d 657, 662 (Tex. App.—Houston [1st Dist.], 2003, pet. denied).

Reformation also is available based on a unilateral mistake accompanied by fraud. See Cardenas v. Varner, 182 S.W.3d 380, 382 (Tex. App.—Amarillo, 2005) aff'd., ___ S.W.3d ___, 2007 WL 624074 (Tex. 2007). Fraud can be based either on affirmative misrepresentations, or in some instances, on failure to disclose a material fact. The elements of fraud based on affirmative representations are: 1) a material representation was made, 2) the representation was false, 3) the speaker knew the representation was false, or the speaker made it recklessly without any knowledge of the truth and as a positive assertion, 4) the speaker intended the other party act on the representation, 5) the other party in fact acted in reliance upon the representation, and 6) the other party suffered injury. See Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998).

Fraud based on silence requires a threshold showing of a fiduciary or confidential relationship giving rise to a duty to speak on the part of the silent party.[1] See

---

[1] A duty to disclose information arises only when the parties are in a fiduciary or confidential relationship. See Ins. Co. of N. America v. Morris, 981 S.W. 2d 667, 674 (Tex. 1998) ("no duty of disclosure arises without evidence of a confidential or fiduciary relationship"). A fiduciary or confidential relationship is not formed merely because two parties engage in a business transaction. See Swinehart v. Stubbeman, McRaie, Sealy, Laughlin & Browder, Inc., 48 S.W.3d 865, 880 (Tex. App.—Houston [14th Dist.], 2001, pet. denied) ("To impose an informal fiduciary duty in a business transaction, the requisite special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit.").

Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001) ("As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information . . . [and] . . . the party . . . deliberately remains silent."). The remaining elements of fraud based on silence are: (1) a party fails to disclose a material fact within the knowledge of that party; (2) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by failing to disclose that fact; and (4) the other party suffers injury as result of acting without knowledge of the undisclosed fact. See Daugherty v. Jacobs, 187 S.W.3d 607, 618 n.3 (Tex. App.—Houston [14th Dist], 2006, no pet.).

B.   Pleading Fraud or Mistake with Particularity

Both mistake and fraud must be plead with particularity. See Fed. R. Civ. Pro. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Rule 9(b)'s requirement of particularity differs with the facts in each case. Tuchman v. DSC Communications Corp., et al., 14 F.3d 1061, 1067-68 (5th Cir. 1994).

As to fraud, although an ironclad and rigid analytical framework does not exist when assessing particularity, general guidelines aid courts in determining the issue. Id. First, and at a minimum, the rule requires a plaintiff to set forth the "who, what,

when, where, how" of the alleged fraud.  Williams v. Bell Helicopter Textron Inc., 417 F.3d 450, 453 (5th Cir. 2005).  More specifically, Rule 9(b) requires "the particulars of time, place, and contents of false representations as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."  Tuchman, 14 F.3d at 1068; Tel-Phonic Services, Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992).  Second, although the rule allows *scienter* to be pled generally,[2] the rule still requires "specific facts to support an inference of fraud."  Tuchman, 14 F.3d at 1068.

Few federal courts have addressed the requirements for pleading mistake with particularity.  It appears, however, that at a minimum, a party must aver what was intended, what was done, and how the mistake came to be made.  See Wright & Miller, 5A Federal Practice & Procedure § 1299 (3d Edition).[3]

**C.  Dismissals Based on Failure to State a Claim**

Rule 12(b)(6), Federal Rules of Civil Procedure, permits a party to assert by motion to dismiss a defense of "failure to state a claim upon which relief can be

---

[2]  "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

[3]  Wright & Miller observe that the inclusion of "mistake" in Rule 9(b) is an unexplained mystery.  See 5A Federal Practice & Procedure § 1299 (3d Edition) ("one of the most important justifications for the first sentence of Rule 9(b), the protection of the reputation of the party to be charged, simply does not apply to an allegation of mistake, making the rule's application to mistake something of a mystery.").

granted." On a Rule 12(b)(6) motion, the court must decide whether the facts alleged, if true, would entitle the claimant to some legal remedy. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal is proper only if there is either: (1) "the lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to facts stated in the complaint and the documents either attached to or incorporated in the complaint." Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017 (5th Cir. 1996). The court also may "consider matters of which [it] may take judicial notice." Id. at 1017-18; see Fed. R. Evid. 201(f). Matters of public record, items appearing in the record of the case, and exhibits attached to the complaint also may be considered. See 5A Charles Alan Wright et al., Federal Practice And Procedure § 1357 (2d ed.).

The court must accept as true all material allegations in the complaint as well as any reasonable inferences to be drawn from them. See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982). Moreover, well-pleaded facts must be reviewed in the light most favorable to the claimant. See Piotrowski v. City of Houston, 51 F.3d 512, 514 (5th Cir. 1995). A claimant, however, must allege specific facts, not conclusory allegations. See Elliott v. Foufas, 867 F.2d 877, 881 (5th Cir. 1989). Conclusory allegations and unwarranted

deductions of fact are not admitted as true. See Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." Kaiser Aluminum, 677 F.2d at 1050. However, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." 2A Moore's Federal Practice ¶ 12.07 [2.-5] at 12-91. 2 Moore's Federal Practice 3d ¶ 12.34(4)(a) at 12-72.7. Finally, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

## IV. Application

### A. Does the Counterclaim Allege a Prior Agreement?

Existence of a prior agreement is a critical element of a claim for reformation based on mutual mistake. Throughout its counterclaim and briefs on the motion to dismiss, Samson uses the words "intent" and "agreement" interchangeably. While this is perhaps poor and imprecise use of language, it does not doom Samson's counterclaim *a priori* because Samson is entitled to all reasonable inferences and to

liberal construction of its pleadings in the light most favorable to Samson. With that in mind, Samson's counterclaim alleges: *"It was the parties' intention . . . that Samson . . . would have the ability to pool or unitize Venus' reserved interests. . ."* (Samson's Answer to Amended Complaint Counterclaims at ¶ 102). One can reasonably view this allegation as asserting Samson's and Venus's agreement, as joint intent can be formed by and reflective of an agreement. At this procedural stage, it is a reasonable inference that Samson's counterclaim alleges that Venus and Samson agreed that Samson would have authority to pool.[4]

**B.     Does the Counterclaim Allege Mistake?**

The second element of a reformation claim is that through a mutual mistake in reducing the parties' agreement to writing, the contract fails to reflect the actual agreement of the parties. In this alternative counterclaim, Samson argues that Venus and Samson agreed that Samson would have pooling authority, but – as the court has now determined – the PSA's terms regarding pooling were inadequate to grant this

---

[4]     The court finds it unnecessary to address Samson's alternative argument that industry custom of pooling authority always being granted absent an express provision to the contrary can satisfy the "agreement" element of a reformation claim. In passing, the court notes that while industry custom generally can be used to fill in terms of a contract when the contract is silent as to the issue, it is not likely that industry custom can fulfill this same function when state law explicitly requires an expressly stated agreement.

authority.[5]  Although Samson's briefing on this point has waffled somewhat, Samson on the whole alleges that the PSA's failure to grant pooling authority expressly was due to mutual mistake as to the legal sufficiency of the language actually used in the contract.  This adequately alleges that the failure of the contract to embody the parties' agreement was due to a mutual mistake as to the legal effect of the contract language.

Further, Samson's pleading meets the heightened pleading requirements of Rule 9(b).  Samson alleges what was intended:  that the Venus-Samson PSA grant Samson authority to pool.  Next, Samson alleges what was done:  the parties inserted two provisions of the PSA the parties mistakenly believed sufficient to grant pooling authority.  Finally, Samson alleges how the mistake came to be made:  the provisions of the PSA and alleged industry custom led both parties to erroneously believe that the PSA granted Samson pooling authority.

**C.    Does the Counterclaim Allege Fraud?**

Samson presents a moving target with its allegations of fraud.  In its counter-claim, Samson alleges that "Venus' *silence* under these circumstances is tantamount to . . . fraud." (Samson's Answer to Amended Complaint and Counterclaims at ¶

---

    [5]    The court recognizes that Samson maintains its claims that the PSA
    *does* grant it pooling authority.  Samson's counterclaim is presented in the
    alternative, and is premised on the court's finding that the PSA *does not*
    authorize pooling.

104)(Italics supplied).  In its supplemental briefings however, Samson states that its claims are *not* based on fraud, i.e., "Samson bases its alternative reformation claim on a mutual mistake, and *does not allege fraud*." (Samson's Supplemental Briefing, at ¶ 6)(Italics supplied).  Then, Samson shifts its position again by purporting to explain that "it intended to say that the claim was not based on fraud *by silence alone*." (Samson's Response to Supplemental Briefing, at ¶ 14) (Italics supplied).

Given Samson's artful dodging on this issue, the court must determine for itself whether Samson's counterclaim at any point alleges facts that would support a finding on the elements of fraud.

    1.    *Fraud based on misrepresentations*

Samson claims that Venus's representations to a bankruptcy court (that Samson would have authority to pool) constitute fraud if – as the court has determined – the contract did not actually provide for this authority.  Samson fails to allege, however, that Venus knew the representation was false.  Statements can be *inaccurate* without being fraudulent.  Fraud requires more than a showing of a false statement; it requires a showing that the party making the statement *knew* it was false.  Also missing is an allegation that Venus intended for Samson to rely on the statements made to the bankruptcy court.  Samson alleges that it did in fact rely on them, but actual reliance is a separate element.  In short, Samson could prove every factual

allegation in its counterclaim, and it would not have proven a case for fraud based on misrepresentation.

### 2.  *Fraud based on Venus's silence*

An essential element for a claim of fraud based on silence is the existence of a fiduciary or confidential relationship between the parties.  A party must have a duty to speak or make a disclosure before it will be held liable for its silence.  Samson alleges no facts that would support a finding of a fiduciary or confidential relationship between Venus and Samson.  There is nothing to indicate that the parties were engaging in anything other than a standard business transaction which, as Samson has repeatedly argued, does not give rise to a fiduciary relationship.

### 3.  *Request to Amend*

Samson requests permission to replead if the court concludes that its counter-claim does not allege a cognizable claim or fails to plead with particularity.  Given Samson's previous opportunity to replead its counterclaim with a more definite statement, the court assumes that Samson already has pleaded its counterclaim as best it can.  Further, the court must avoid any appearance of partiality by permitting Samson to further amend when the only purpose therefor would be a tactical ploy to cure pleading deficiencies determined by the court.  Therefore, the court declines Samson's request.

## V.  CONCLUSION

Samson has stated a valid claim for reformation based on mutual mistake.  It has alleged facts that, if true, would support a finding of a prior agreement and a mutual mistake in reducing that agreement to writing.  The circumstances of the mistake have been pleaded with sufficient particularity to meet Rule 9(b)'s requirements.  Samson has not, however, stated a valid claim for reformation based on fraud.  Absent from Samson's allegations are facts that would support a finding that Venus's representations were knowingly false when made, or that Venus and Samson were in a fiduciary or confidential relationship.  An order will be entered separately.

SIGNED this  19   day of March, 2007

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge